IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Jonathan Bennett, | ) | Case No. 2:20-cv-1143-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER AND OPINION** |
| v. | ) | |
| | ) | |
| The Boeing Company, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the Report and Recommendation ("R&R") of the

Magistrate Judge (Dkt. No. 97) recommending that the Court grant Defendant's partial motion for

summary judgment (Dkt. No. 70).  For the reasons set forth below, the Court adopts the R&R as

the Order of the Court and grants Defendant's partial motion for summary judgment.

## I.    Background and Relevant Facts

Plaintiff is an African American male who began working for Defendant as an aircraft

painter in May 2013.  Defendant has two paint departments: the Component Paint Department and

the Decorative Paint Department. Plaintiff began his career in the Component Paint Department

but later moved to the Decorative Paint Department.  Defendant states the Component Paint

Department experienced a staff shortage sometime in 2017 and that it implemented a "Component

Recovery Plan" whereby Defendant "loaned" painters in its Decorative Paint Department to the

Component Paint Department to assist with a backlog of work.

In pertinent part, Plaintiff claims he began experiencing harassment and discrimination

when Eric Infinger became his immediate supervisor in the Decorative Paint Department. Plaintiff

claims that Infinger showed racial favoritism towards Caucasian employees to the detriment of

African American workers by loaning Plaintiff and other African American workers to the

Component Paint Department to perform less-desirable work such as sanding, sweeping, taking out trash, and cleaning up after Caucasian co-workers. Plaintiff asserts he reported Infinger's actions to Defendant's Human Resources Department and its upper-level management, but that nothing was done.

On January 14, 2021, the Court granted in part and denied in part Defendant's motion to dismiss. (Dkt. No. 57). The Court dismissed Plaintiff's claims for breach of contract and breach of contract accompanied by a fraudulent act. Accordingly, Plaintiff's remaining claims are for (1) race discrimination, (2) hostile work environment, and (3) retaliation in violation of 42 U.S.C. § 1981.

Defendant now moves for partial summary judgment on Plaintiff's race discrimination and retaliation claims. (Dkt. No. 70). Plaintiff opposes. (Dkt. No. 74). Defendant filed a reply. (Dkt. No. 77).

On October 25, 2021, the Magistrate Judge filed an R&R recommending that the Court grant Defendant's partial motion for summary judgment. (Dkt. No. 97). Plaintiff filed timely objections to the R&R, (Dkt. No. 98), to which Defendant responded, (Dkt. No. 99).

Defendant's motion is fully briefed and ripe for disposition.

## II.    Legal Standards

### a.    Fed. R. Civ. P. 56 — Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court interprets all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden, the non-moving party must come forth with "specific facts showing that

there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)); *Lilly v. Crum*, No. 2:19-CV-00189, 2020 WL 1879469, at *4 (S.D.W. Va. Apr. 15, 2020) (noting that the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a genuine dispute) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### b. The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where the plaintiff fails to file any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted). Because Plaintiff filed objections to the R&R, the R&R is reviewed *de novo.*

### III.    Discussion

After a careful review of the R&R, the relevant record, and Plaintiff's objections, the Court finds that the Magistrate Judge correctly determined that Defendant is entitled to summary judgment on Plaintiff's claims for racial discrimination and retaliation. The Court discusses each of Plaintiff's claims in turn.

**Race Discrimination**

First, the Magistrate Judge recommended, under the burden shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), granting Defendant summary judgment on Plaintiff's § 1981 claim for racial discrimination. (Dkt. No. 97 at 6-16). *See Flowers v. International Longshoreman's Ass'n Local 1422*, No. 2:19-cv-00254-DCN-MGB, 2019 WL 6093255, at \*9 (D.S.C. June 4, 2019), *adopted sub nom. Flowers v. International Longshoremen's Ass'n Local 1422*, No. 2:19-cv-00254-DCN, 2019 WL 3927444 (D.S.C. Aug. 20, 2019) (A prima facie case for race discrimination under § 1981 requires that: (1) the plaintiff is a member of a protected class; (2) the plaintiff performed his job in a satisfactory manner; (3) the plaintiff was subjected to an adverse employment action; and (4) the plaintiff was treated differently than similarly situated individuals outside of his protected class.)  The Magistrate Judge found that Plaintiff could not establish element (3)—namely that Plaintiff suffered an adverse employment action based on his assignments to the Component Paint Department.

"[An] adverse employment action is 'an absolute precondition' to an employment discrimination suit." *Batten v. Grand Strand Dermatology, LLC*, C/A No. 4:18-cv-0616-MGL-TER, 2019 WL 9667692, at \*6 (D.S.C. Dec. 20, 2019) (quoting *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)). Not every personnel decision constitutes an adverse employment action for purposes of a disparate treatment claim. *Hemphill v. United Parcel Serv., Inc.*, 975 F. Supp. 2d 548, 570 (D.S.C. 2013); *see also Thorn v. Sebelius*, 766 F. Supp. 2d 585, 599 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012) ("[N]ot everything that makes an employee unhappy is actionable adverse action."). Rather, an adverse employment action is explicitly limited to those actions that affect employment or alter the conditions of the workplace. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006). In other words, an alleged discriminatory act must "adversely affect[] the terms, conditions, or benefits of the plaintiff's employment." *Holland v.*

-4-

*Washington Homes Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation omitted). "Typical examples of adverse employment actions include 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, [and] reduced opportunities for promotion.'" *Cole v. Wake Cty. Bd. of Educ.*, 494 F. Supp. 3d 338, 345 (E.D.N.C. 2020), *aff'd*, 834 F. App'x 820 (4th Cir. 2021), *cert. denied sub nom. Cole v. Wake Cty. BD. of ED.*, No. 20-1373, 2021 WL 2302100 (U.S. June 7, 2021) (quoting *Boone v. Goldin*, 178 F.3d 253, 255–56 (4th Cir. 1999)).

After a careful consideration of the R&R, the relevant record, and Plaintiff's objections, the Court finds that the Magistrate Judge ably addressed the issues and correctly found that Plaintiff has not created a question of material fact as to whether being assigned to the Component Paint Department was an adverse employment action. As the Magistrate Judge correctly noted in the R&R, it is undisputed that Plaintiff volunteered for two longer-term assignments in the Component Paint Department as part of the Component Recovery Plan. (Dkt. No. 70-3 at 2) (Plaintiff email requesting to work in Component Paint Department under Infinger in 2018). It is also undisputed that Plaintiff was not permanently reassigned to the Component Paint Department, *see, e.g.*, *Haggins v. Sam's E., Inc.*, No. 3:13-cv-1596-MBS, 2015 WL 5781390, at *8 (D.S.C. Sept. 30, 2015) ("Temporary changes to assigned tasks or workload are not adverse employment actions."), and that Plaintiff's assignments had no negative impact on his pay, potential for continued employment, or ability to be promoted, (Dkt. No. 70-1 at 15-16) (Plaintiff testimony to this effect). *Blakney v. N. Carolina A&T State Univ.*, No. 1:17-cv-874, 2019 WL 1284006, at *15 (M.D.N.C. Mar. 20, 2019) (noting that adverse employment actions "must generally impact an employee's pay, potential for continued employment, or likelihood of promotion within the organization"). Further, the Magistrate Judge correctly observed that workers in both paint departments were required to clean and sand, (Dkt. No. 97 at 12-13) (citing declaration of Robert

Jernigan, (Dkt. No. 70-2 at 5) (noting that all painters must clean up areas as they go and that all painters are required to pick up their trash as part of the work process)), and that "even assuming Plaintiff was required to do more cleaning and sanding while working in the Component Paint Department, he would not have experienced a significant change in his job responsibilities," (Dkt. No. 97 at 13). *See Vedula v. Azar*, No. 8:18-cv-0386-TDC, 2020 WL 5500279, at \*9 (D. Md. Sept. 11, 2020) (finding no adverse employment action where "additional" work assignments were "largely memorialized duties and responsibilities that were already required of employees in [plaintiff's] position").   Thus, the Magistrate Judge correctly concluded that the above evidence collectively "undermines Plaintiff's claim that working in the Component Paint Department was so detrimental as to constitute an adverse employment action [and] also undermines Plaintiff's claim that Defendant relegated him to work in the Component Paint Department on account of race-based discrimination." (Dkt. No. 97 at 15).  Plaintiff filed objections to this finding, which the Court addresses below.

Plaintiff first argues that the Magistrate Judge's finding that Plaintiff did not suffer an adverse employment action was erroneous because the assignments constituted "constructive demotion." (Dkt. No. 98 at 5) ("Mr. Infinger constructively demoted Plaintiff through harassing behavior" including "racially offensive comments while assigning [African American workers] tasks that drastically differed from what Plaintiff knows is typical for an assignment to the Component Paint Department."); (*Id.* at 6) ("Plaintiff . . . suffered adverse employment action through a constructive demotion through janitorial and menial tasks that did not utilize Plaintiff's experience, expectations, or advancement.").

The Court rejects this argument on two grounds. First, Plaintiff never raised a constructive demotion argument in his opposition to Defendant's partial motion for summary judgment, thus

waiving it. *See generally* (Dkt. No. 74); *Dune v. G4s Regulated Sec. Solutions, Inc.*, No. 0:13-cv-01676, 2015 WL 799523, at \*2 (D.S.C. Feb. 25, 2015) ("The Court is not obligated to consider new arguments by a party for the first time in objections to the [ ] Report."); *Mumford v. Florence Cty. Disabilities & Special Needs Bd.*, No. CV 4:19-1330-SAL, 2021 WL 37476, at \*3 (D.S.C. Jan. 5, 2021) ("A magistrate's decision should not be disturbed on the basis of arguments not presented to him.") (citing *Jesselson v. Outlet Assocs. of Williamsburg, Ltd. P'ship*, 784 F. Supp. 1223, 1228 (E.D. Va. 1991)); *ContraVest Inc. v. Mt. Hawley Ins. Co.*, 273 F. Supp. 3d 607, 619 (D.S.C. 2017) ("Parties should . . . fully advance their arguments, at all stages of the litigation, unless they are prepared to waive them.") (citation omitted).  Second, even if the argument were timely, Plaintiff applies the wrong standard in his objections. Namely, while Plaintiff argues that the assignments to the Component Paint Department did not properly utilize his experience, a constructive demotion claim examines whether an assignment forced an employee to seek a demotion or transfer to another department. *See Cuffee v. Tidewater Cmty. Coll.*, 409 F. Supp. 2d 709, 718–19 (E.D. Va.), *aff'd*, 194 F. App'x 127 (4th Cir. 2006) (requiring a plaintiff to prove his employer "deliberately made [his] working conditions intolerable for the purpose of *forcing* [the employee] *to seek a demotion/transfer to another department*" to establish a constructive discharge claim) (emphasis added).

Next, Plaintiff objects that genuine issues of material fact exist as to whether Plaintiff's reassignment was an adverse employment action because Plaintiff and other African American workers were sent to the Component Paint Department "for the sole purpose of cleaning up after Caucasian workers under Mr. Infinger." (Dkt. No. 98 at 6) (claiming Defendant's "clean as you go" police was discriminatorily applied and citing to various affidavits which state that African American painters were loaned to the Component Paint Shop to perform "janitorial tasks, such as

sweeping, and cleaning up after the other Caucasian coworkers"); (*Id.* at 9) (arguing that "Plaintiff

volunteering [under Infinger] was not totally of his wishes but due to Defendant's work assignment

decreases which left Plaintiff no choice" but citing no record evidence to support the contention).

For the reasons already stated above, however, the Court overrules these objections.  Namely,

Plaintiff's objections fail to show or otherwise explain how working in the Component Paint

Department had a "significant detrimental effect" on Plaintiff's employment. *See* (Dkt. No. 97 at

11-14).  Nor do Plaintiff's objections attempt to refute or otherwise negate, with record evidence,

the undisputed fact that Plaintiff volunteered to work under Infinger in the Component Paint

Department.

Accordingly, the Court grants Defendant summary judgment on Plaintiff's discrimination

claim.

**Retaliation Claim**

The Magistrate Judge recommended, under the *McDonnell Douglas* burden shifting

framework, granting Defendant summary judgment on Plaintiff's § 1981 retaliation claim. (Dkt.

No. 97 at 16-22).  Plaintiff objected to this finding.

Under § 1981, to state a retaliation claim, a plaintiff must first make a *prima facie* showing

of retaliation by proving that: (1) he engaged in a protected activity; (2) his employer took a

materially adverse action against him; and (3) there was a causal link between the two events.

*Perkins v. Intl'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Boyer-Liberto v. Fontainebleau

Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) ("A prima facie retaliation claim under 42 U.S.C. § 1981

has the same elements [as a Title VII retaliation claim]."). Under § 1981, "an employee opposes

race discrimination when she 'communicates to her employer a belief that the employer has

engaged in' such discrimination." *Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 172

(4th Cir. 2020), *as amended* (Oct. 16, 2020) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009)). An employee is protected from retaliation for reporting both "employment actions actually unlawful under [§ 1981]" and "employment actions she reasonably believes to be unlawful." *Id.* (quoting *Boyer-Liberto*, 786 F.3d at 282). "In line with other § 1981 claims, to state a § 1981 retaliation claim, a plaintiff must allege facts rendering it plausible that, but for her participation in protected activity, she would not have suffered a materially adverse action." *Id.* at 172–73 (citing *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 217–18 (4th Cir. 2016); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020)).  The Magistrate Judge found that Plaintiff could not establish either the second or third elements of a § 1981 retaliation claim.

The Court finds that the Magistrate Judge ably addressed the issues and correctly found that Defendant is entitled to summary judgment on Plaintiff's retaliation claim.  As the Magistrate Judge observed, Plaintiff's assignments to the Component Paint Department cannot be considered materially adverse because, most pertinently, the assignments were temporary and had no impact on his pay or job title. *McLaughlin v. Barr*, No. 1:19-cv-318, 2020 WL 869914, at *11 (M.D.N.C. Feb. 21, 2020) (finding that a temporary change in the plaintiff's job duties did not constitute a materially adverse action where plaintiff failed to allege any detrimental effect on her employment, other than the reassignment itself).  Further, even assuming such assignments were materially adverse, the Magistrate Judge correctly found that Plaintiff could not demonstrate a causal connection between those assignments and his protected complaints because Plaintiff could not remember when he made any of his protected complaints against Infinger and did not provide evidence, besides his own speculation, as to the temporal proximity of his complaints and his assignments to the Component Paint Department. (Dkt. No. 97 at 19-20 & n. 6) (further noting

that, besides his own deposition testimony, Plaintiff presents no evidence of protected complaints against Infinger); (Dkt. No. 70-1 at 47) ("Q: And you don't remember when these occurred, what timeframe? A: No, ma'am."). Additionally, as the Magistrate Judge noted, and as Plaintiff does not substantively challenge, Defendant has presented undisputed evidence that Robert Jernigan, not Infinger, was solely responsible for the job duties assigned to each painter who worked during a temporary assignment in the Component Paint Department—a fact which undermines Plaintiff's "contentions that Mr. Infinger *loaned* him to the Component Paint Department and *assigned* him less-desirable duties while there in retaliation for his protected complaints." (Dkt. No. 97 at 21) (emphasis added). Plaintiff filed objections to this finding which the Court addresses below.

The Court overrules Plaintiff's objections. (Dkt. No. 98 at 9-11). Plaintiff does not dispute or even attempt to dispute any of the specific findings of the Magistrate Judge discussed above. Instead, Plaintiff restates that he made complaints to upper management about Infinger and that no disciplinary action was taken against Infinger. As noted *supra*, however, the Magistrate Judge found that Plaintiff *had* engaged in protected activity. Further, the fact no disciplinary action was taken against Infinger is not relevant here as to whether Plaintiff has satisfied elements two and three of his § 1981 retaliation claim.

**IV.     Conclusion**

For the foregoing reasons, the Court **ADOPTS** the R&R, (Dkt. No. 97), as the Order of the

Court, and **GRANTS** Defendant's partial motion for summary judgment, (Dkt. No. 70).  The Court

grants Defendant summary judgment on Plaintiff's race discrimination and retaliation claims.

Plaintiff's claim for hostile work environment, however, shall proceed to trial.

**AND IT IS SO ORDERED.**

<u>Richard Mark Gergel</u>
Richard Mark Gergel
United States District Judge

December 6, 2021
Charleston, South Carolina

-11-